**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| SONATE CORPORATION, d/b/a Vegadelphia Foods, | Case No. 22-cv-00812 |
| Plaintiff, | |
| v. | DEMAND FOR A JURY TRIAL |
| DUNKIN' BRANDS GROUP, INC., a Massachusetts Corporation, DUNKIN' BRANDS, INC., a Delaware Corporation, and BEYOND MEAT, INC., a Delaware Corporation, | |
| Defendant. | |

## TRADEMARK INFRINGEMENT COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Sonate Corporation, d/b/a Vegadelphia Foods ("Sonate" or "Vegadelphia"), by its undersigned counsel, complains and alleges against Defendants Dunkin' Brands Group, Inc., Dunkin' Brands, Inc. (collectively "Dunkin'") and Beyond Meat, Inc. ("Beyond") (together, "Defendants") as follows:

## NATURE OF THE CASE

1.     This action arises from Defendants' blatant copying of Vegadelphia's slogan WHERE GREAT TASTE IS PLANT-BASED (the "WHERE GREAT TASTE IS PLANT-BASED® Mark"), which Vegadelphia continuously used since 2013. Defendants knew about this federally-registered trademark on information and

belief when they adopted the indistinguishable GREAT TASTE, PLANT-BASED slogan for a celebrity-laden national advertising campaign supporting their Beyond Sausage meat substitute menu item. The result of Defendants' illegal campaign was impressive and immediate: A profitable shift of Dunkin's marketplace positioning, expansion of its nationwide overall sales, increase in customer purchases per visit, growth of Beyond's base of repeat customers, and improvement of Dunkin's share price, greatly enhancing the goodwill of both companies.

2.      Plaintiff's savory Vegadelphia meat alternatives were available at delis and fast food restaurants for many years prior to Dunkin's launch. This includes fast food restaurants such as the 40-location Meson Sandwiches, traditional restaurants, pizza shops, and the like, selling menu items built around savory Vegadelphia meat alternatives perfected by Plaintiff's family company whose legacy traces its roots back generations.

3.      Within the last few years, alternative "meatless meat" products became truly mainstream, driven in part by increasing consumer focus on health and sustainability. Massive fast food companies finally dove in. For example, in early 2019, Burger King announced a meatless Whopper in partnership with Beyond competitor, Impossible Foods.

4.      Riding the wave, Dunkin' and Beyond collaborated in 2019 to launch a Dunkin Beyond Sausage sandwich, with its meat substitute sausage patty supplied

by Beyond and competing directly with the Vegadelphia meat alternatives. Although a new product offering that should have had fresh marketing, Dunkin' and Beyond chose to instead promote their collaboration under Plaintiff's already-established slogan.

5.     Starting October 2019, the Beyond Sausage advertising campaign was built around the essentially identical "GREAT TASTE, PLANT-BASED" slogan. Dunkin' and Beyond flooded this GREAT TASTE, PLANT-BASED advertising and promotional campaign through virtually every medium, including television and online celebrity ads featuring Snoop Dogg.

6.     Not only was the "GREAT TASTE PLANT-BASED" slogan an imitation of Vegadelphia's trademark, but Defendants used placement and imagery in their branding that is nearly identical to Vegadelphia's own branding. The overlap in font style, stacked text, and even sunray background imagery, is beyond coincidence:

    

**PLAINTIFF**                              **DEFENDANTS**

7.     Defendants' "GREAT TASTE PLANT-BASED" products and

branding were rolled out to all of Dunkin's 9,000 U.S. restaurant locations as Defendants made prolific use of their infringing slogan to advertise and drive sales of alternative meat and other products. For example, Defendants' nationwide launch included a November 2019 national commercial featuring Snoop Dogg, introducing him in a Dunkin' store setting as he hands a sandwich to a customer from the register with a voice-over: "You want that Plant-Based Great Taste fresh out of the oven?" The screen then flashes to a white background with a sandwich in the middle and "Great Taste Plant Based" zooms in from both sides in the largest and most prominent text. The infringing slogan was demonstrably one of the most central components of Defendants' promotional efforts, if not the single most important component.

8.    Between at least three different commercials featuring the "GREAT TASTE PLANT-BASED" slogan, advertisement tracking data indicates that Dunkin' and Beyond spent approximately $10 million to enjoy more than 1 billion aggregate viewer impressions – enough for nearly every man, women, and child in the United States to see the commercials three times, or to flood a smaller group of viewers far more than three times apiece.

9.    A conservative estimate of Defendants' revenue from the Beyond Sausage sandwiches sold in connection with the infringing "GREAT TASTE PLANT-BASED" slogan exceeds $135 million over the course of just the initial six

months of sales, with Defendants enjoying a combined estimated 60% profit margin. Of course, these sales do not account for additional purchases made by customers drawn into Dunkin' stores by "GREAT TASTE PLANT-BASED" advertising, valuable access to a broader audience, and ultimately improving the intrinsics supporting a higher acquisition price when Dunkin' was acquired in 2020. Expanded access was particularly timely given Dunkin's early 2019 rebranding that replaced "Dunkin' Donuts" with the single-word name "Dunkin'", allowing the brand more flexibility to expand its reach.

10.     Dunkin' and Beyond expanded their reach under the infringing "GREAT TASTE PLANT-BASED" slogan with actual and constructive knowledge of Vegadelphia's prior registered trademark rights on the same mark for the same substitute meat goods. And, they did so even though this put them in direct competition with the Vegadelphia products, including Vegadelphia's competing sales at restaurants such as the popular coffee and sandwich chain, El Meson Restaurants. Defendants' knowing and willful disregard of Vegadelphia's prior registered trademark rights for the exact infringing goods makes this both a classic exceptional case of infringement and what the Lanham Act deems to be counterfeiting.

11.     Vegadelphia is therefore entitled to recover all or some of: Vegadelphia's damages, a reasonable royalty on infringing sales, an equitable

portion of the infringers' profits, statutory damages, punitive damages under state law, attorneys' fees and costs.

## **PARTIES**

12.    Plaintiff Sonate Corporation is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 702 N 3rd Street, PMB 303, Philadelphia, PA 19123.

13.    Defendant Dunkin' Brands Group, Inc. is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business on information and belief located at 130 Royall Street, Canton, Massachusetts 02021.

14.    Defendant Dunkin' Brands, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business on information and belief located at 130 Royall Street, Canton, Massachusetts 02021, and on information and belief both registered to do business in Florida and doing business here at all relevant times.

15.    On information and belief, Dunkin' Brands, Inc. is the operating entity for the Dunkin' business and wholly-owned subsidiary of the formerly-NASDAQ listed holding company Dunkin' Brands Group, Inc., which public company was sold for approximately $11 billion to Inspire Brands, Inc. on or around December 2020, resulting in its delisting from NASDAQ.

16.     Defendant Beyond Meat, Inc. is a Delaware corporation with its principal executive offices located on information and belief at 119 Standard Street, El Segundo, California 90245.

17.     At all times mentioned herein, on information and belief, defendants, and each of them, were an agent, representative, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an agent, representative, and/or alter ego of its co-defendants, with the full knowledge, permission and consent of each and every remaining defendant.

## JURISDICTION AND VENUE

18.     This action arises under the federal trademark statute, 15 U.S.C. § 1051 *et seq.*, and under state law, including the statutory and common law of the State of Florida.

19.     This Court has subject matter jurisdiction over the federal trademark infringement claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367. This Court has subject matter jurisdiction over the related state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

20.     This Court also has diversity jurisdiction under 28 U.S.C. § 1332 as the parties are completely diverse citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

21.    This Court has general personal jurisdiction over Dunkin', which is doing continuous and systematic business in the State of Florida. Dunkin' owns, operates and/or controls 50 (on information and belief) restaurant locations in the City of Orlando, 888 (on information and belief) locations in the State of Florida, and thousands more throughout the United States. On information and belief, Orlando is in the list of top 10 cities for number of Dunkin' locations, while Florida is in the top three states, as Dunkin' has consistently targeted both Orlando and Florida for the opportunities and consumers located in Florida. Dunkin' has caused its products and/or services to be advertised, promoted, and sold in this judicial district.

22.    This Court has specific personal jurisdiction over Dunkin' because the claims asserted in this Complaint also arise out of Dunkin's contacts with this judicial district selling infringing goods that are at issue in the Complaint; and, as a result, Dunkin' has caused tortious injury to Vegadelphia in this judicial district. More specifically, all of Dunkin's U.S. locations, including those in Florida, offered Beyond's meat substitute products at issue in this case. The "GREAT TASTE PLANT-BASED" branding was used in-store at Dunkin' in Orlando, including on employee t-shirts together with Beyond branding, as well as through local Florida marketing channels directed at driving Florida sales. Vegadelphia has felt direct harm caused by Dunkin' in Florida, in particular, including because of

Vegadelphia's strong client and consumer presence in Florida.

23.    This Court has general personal jurisdiction over Beyond, which is doing continuous and systematic business in the State of Florida. Beyond offers its substitute meat products at grocery and restaurant locations in the City of Orlando, the State of Florida, and throughout the United States. Beyond has caused its products and/or services to be advertised, promoted, and sold in this judicial district.

24.    This Court has specific personal jurisdiction over Beyond because the claims asserted in this Complaint also arise out of Beyond's contacts with this judicial district where, in association with Dunkin', Beyond has been distributing infringing goods that are at issue in the Complaint, including on information and belief shipping goods to Dunkin' in Florida that it knew would be sold through the infringing GREAT TASTE, PLANT-BASED campaign; and, as a result, Beyond has caused tortious injury to Vegadelphia in this judicial district. More specifically, each of Dunkin's U.S. locations, including those in Florida, offered Beyond's meat substitute products at issue in this case. The "GREAT TASTE PLANT-BASED" branding was used in-store at Dunkin' in Orlando, including on employee t-shirts together with Beyond branding. Vegadelphia has felt direct harm caused by Beyond in Florida, in particular, including because of Vegadelphia's strong client and consumer presence in Florida, and Beyond intended to and did profit in Florida from additional repeat customers of its Beyond patties as a result.

25.     Further, this Court has jurisdiction over the Defendants under Florida's long-arm statutes and due process. Under Fla. Stat. 48.193(2), each of Defendants have substantial and not isolated activity within this state, including continuous and systematic general business with Florida. This activity for each Defendant is extensive and pervasive, in that a significant portion of the Defendant's business operations or revenue are derived from established commercial relationships in the state. Further, Dunkin Brands, Inc. is registered to do business in Florida with a local registered agent for service of process. In addition, directly or through their agents, under Fla. Stat. 48.193(1), under subsection (a)(1) Defendants carried on a business or business venture in Florida with hundreds of Dunkin' locations in this state, and pursuant to subsection (1)(a)(6), all Defendants collectively created the infringing GREAT TASTE PLANT-BASED at-store campaign materials and directed these materials into the State of Florida which were then used at their direction by the Dunkin' stores in Florida in the ordinary course of commerce, trade, or use to make the infringing sales of the Beyond Sausage sandwiches, and the Defendants each and collectively thereby engaged in solicitation of said sales within this state.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Dunkin' and Beyond have extensive contacts with and conduct business within the State of Florida and this judicial district; Dunkin' and Beyond have caused products and/or services to be advertised, promoted, and sold in this judicial district;

the claims asserted in this Complaint arise out of Dunkin' and Beyond's contacts with this judicial district; the harm to Vegadelphia was substantially felt in this district; and Dunkin' and Beyond have caused tortious injury to Vegadelphia in this judicial district.

## FACTUAL BACKGROUND

**Vegadelphia's Business and the WHERE GREAT TASTE IS PLANT-BASED Marks**

27.     Vegadelphia was founded in 2004 in Philadelphia, Pennsylvania, and is run by two brothers, whose family has been in the food industry for generations.

28.     Vegadelphia manufactures and sells high quality food products made from plants. Vegadelphia products not only appeals to vegans and vegetarians, but to anyone looking for plant-based food options without sacrificing look or taste.

29.     Since its launch, Vegadelphia has been providing vegan food products for food service providers or retail operators looking to bring in new customers, increase business and keep customers satisfied.

30.     As a result, over the years, Vegadelphia has grown into a multi-state business known for its dedication to quality. The VEGADELPHIA brand sells veggie-lean beef and veggie-lean chicken ("The Perfect Ingredient®"), and has also sold vegan, crab-free crab cakes.

31.     In 2013, Vegadelphia adopted a powerful slogan: WHERE GREAT TASTE IS PLANT-BASED. By March 2014, Vegadelphia had placed the mark on

all Vegadelphia's key packaging and marketing. Vegadelphia has been continuously and exclusively using the WHERE GREAT TASTE IS PLANT-BASED® Mark in commerce in association with its substitute meat products since that time.

32.   On March 10, 2015, the United States Patent and Trademark Office ("USPTO") issued to Vegadelphia U.S. Trademark Registration No. 4,698,499 for the WHERE GREAT TASTE IS PLANT-BASED® Mark in connection with "meat substitute and poultry substitute" goods along with seafood substitute goods and retail and wholesale food services. A true and correct copy of this registration and is attached as **Exhibit A** and a true and correct copy of the USPTO's online Trademark Electronic Search System (TESS) printout for this registration is attached as **Exhibit B**, with both being incorporated herein by reference.

33.   The WHERE GREAT TASTE IS PLANT-BASED® Mark is an incontestable mark. On March 11, 2020, Vegadelphia renewed the registration for its WHERE GREAT TASTE IS PLANT-BASED® Mark, submitting Section 8 and 15 declarations of use and incontestability. In keeping its registrations up to date, Vegadelphia's renewal filing appropriately cancelled the registration only as to extraneous goods and services – namely, seafood substitute and retail and wholesale food services.

34.   Vegadelphia is the owner of all right, title and interest in, including the right to enforce, the WHERE GREAT TASTE IS PLANT-BASED® Mark for meat

substitute and poultry substitute goods.

35.     Vegadelphia's registration of the WHERE GREAT TASTE IS PLANT-BASED® Mark on the Principal Register maintained by the USPTO is constructive notice to Defendants and others of Vegadelphia's claim of ownership thereof pursuant to 15 U.S.C. § 1072. On information and belief, Beyond engaged in a pre-launch search process that disclosed this mark prior to the nationwide launch of the infringing campaign, but still adopted and launched the infringement.

36.     Registration No. 4,698,499 for the WHERE GREAT TASTE IS PLANT-BASED® Mark is incontestable. It meets the provisions of 15 U.S.C. § 1065 as Vegadelphia has filed a Declaration of Incontestability signed by Vegadelphia that it has made continuous use of the WHERE GREAT TASTE IS PLANT-BASED® Mark for five years after initial registration on March 10, 2015.

37.     The incontestable status of the registration for the WHERE GREAT TASTE IS PLANT-BASED® Mark means the mark is presumptively distinctive and is conclusive evidence of the following:  the validity of the registered WHERE GREAT TASTE IS PLANT-BASED® Mark; Vegadelphia's ownership of the WHERE GREAT TASTE IS PLANT-BASED® Mark; and Vegadelphia's exclusive right to use the WHERE GREAT TASTE IS PLANT-BASED® Mark with the services in Registration No. 4,698,499.

38.     The WHERE GREAT TASTE IS PLANT-BASED® Mark is inherently

distinctive, and further has acquired distinctiveness at least through substantially exclusive and continuous use of the mark in commerce in the United States for more than five years.

39. Vegadelphia also owns common law rights to the WHERE GREAT TASTE IS PLANT-BASED® Mark based on the continuous and extensive bona fide use by Vegadelphia in interstate commerce in the United States to promote its goods and services over the past at least eight years.

40. Since adoption, the WHERE GREAT TASTE IS PLANT-BASED® Mark has been consistently used on Vegadelphia packaging and marketing, both with and without stylization, for example:







41.     Vegadelphia's redistributor has sold and/or currently sells products in association with the WHERE GREAT TASTE IS PLANT-BASED® Mark to distributors in Florida, Puerto Rico, Pennsylvania, New York, New Jersey, and other states.

42.     Vegadelphia has also maintained a national fast-food account with Meson Sandwiches, a fast-food restaurant with approximately 40 locations across Florida and Puerto Rico, Puerto Rico's largest restaurant chain, and which enjoys annual sales near $100 million and includes three locations in Florida and two specifically in Orlando.

43.     Similarly, Vegadelphia held placement in the deli of the entire mid-Atlantic region of Whole Foods in 2014-2016 through direct distribution of goods associated with the WHERE GREAT TASTE IS PLANT-BASED® Mark, including at least three-dozen stores.

44.     Vegadelphia sells its meat substitute products at wholesale in 40-pack boxes of clear-wrapped 4-ounce meat alternatives. They are then sold in a store's food service section. The distributors are given 2-page product brochures both for retailer sales and for use at retail, and to provide product information to be re-used in food service marketing prepared by the retailer. The WHERE GREAT TASTE IS PLANT-BASED® Mark is called out prominently.

 

45.     Vegadelphia has devoted substantial time, effort, and resources to the development and promotion of the WHERE GREAT TASTE IS PLANT-BASED® Mark and the goods offered thereunder. As a result of Vegadelphia's efforts, a significant number of the consuming public as well as restaurant and deli distributors have come to recognize and rely upon the WHERE GREAT TASTE IS PLANT-BASED® Mark as a source-indicator and an indication of the high quality and goodwill associated with Vegadelphia's meat substitute products.

46.     The WHERE GREAT TASTE IS PLANT-BASED® Mark is an indicator of source and quality of the goods that Vegadelphia provides throughout the country, and it enjoys a high degree of consumer recognition.

- 17 -

### Defendants' Unauthorized Use Of Vegadelphia's
### WHERE GREAT TASTE IS PLANT-BASED® Marks

47.     In or about December 2019, Vegadelphia discovered that Dunkin' entered into a strategic partnership with Beyond pursuant to which Dunkin' would sell Beyond-branded imitation meat products at Dunkin' retail locations throughout the United States.

48.     In order to promote that partnership, Dunkin and Beyond developed a cohesive advertising campaign centered around the slogan "GREAT TASTE PLANT-BASED."

49.     In Summer 2019, the Beyond Sausage Sandwich was launched in Dunkin's New York stores. They were so successful that a nationwide launch to all 9,000 Dunkin stores took place on October 21, 2019.

50.     The nationwide launch included a November 2019 Snoop Dogg national commercial, with a voice-over introducing him in a Dunkin' store setting. Snoop Dogg's first line as he hands a sandwich to a customer from the register was, "You want that Plant-Based Great Taste fresh out of the oven?" The screen then flashes to a white background with a sandwich in the middle and "Great Taste Plant Based" zooms in from both sides in the largest and most prominent text.





51.    Both Dunkin' and Snoop Dogg himself promoted their collaboration and "Great Taste Plant Based" widely on social media:



52.   Between at least three different commercials featuring the "GREAT TASTE PLANT-BASED" slogan, advertisement tracking data indicates that Dunkin' and Beyond spent approximately $10 million to enjoy more than 1 billion aggregate viewer impressions – enough for nearly every man, women, and child in the United States to see the commercials three times, or to flood a smaller group of viewers far more than three times apiece.

53.   Without a doubt, the infringing slogan was one of the most central components of Defendants' promotional efforts, if not the single most important component. As a part of their GREAT TASTE PLANT-BASED campaign, Dunkin' and Beyond's use of the infringing trademark was featured prominently on store

signage, marketing material and promotional material such as t-shirts, on the Dunkin' app, on the Dunkin' website, and in ads on social media, to name just a few examples, including the below:














54.    An online sweep of customer pictures also identified examples of in-store use of "GREAT TASTE PLANT-BASED" nationwide, in Hawaii, Los Angeles and New York in late 2019:





Hawaii                                     Hawaii







| Los Angeles | New York |
|---|---|

### The Likelihood of Confusion Between the Parties' Trademarks

55.     Vegadelphia's WHERE GREAT TASTE IS PLANT-BASED® Mark is a strong trademark. It is inherently distinctive for the substitute meat products sold thereunder and was granted a federal trademark registration without requirement that any portion of the mark be disclaimed as unprotectable.

56.     Vegadelphia's WHERE GREAT TASTE IS PLANT-BASED® Mark is also incontestable as a matter of law, which enhances the strength of the mark as it is presumed to be at least descriptive with secondary meaning and therefore strong.

57.     Vegadelphia's WHERE GREAT TASTE IS PLANT-BASED® Mark is further strengthened by Vegadelphia's substantially exclusive use of the mark, as shown at least by the absence of other such marks from the Trademark Register. (In fact, it appears the only other mark even applied for on the principal or supplemental register is Beyond's variation on a theme – PLANT-BASED, GREAT TASTE – which (even with using flipped phrasing) was still rejected by the USPTO based on its likelihood of confusion with Vegadelphia's registered trademark, and ultimately that March 2020 application was abandoned by Beyond.

58.     Vegadelphia has also enjoyed significant commercial success from sale of products in association with the WHERE GREAT TASTE IS PLANT-BASED® Mark, including major deals for grocery and retail distribution.

59.     Dunkin' and Beyond's use of "GREAT TASTE PLANT-BASED" is virtually identical to Vegadelphia's WHERE GREAT TASTE IS PLANT-BASED® Mark. The entirety of Dunkin' and Beyond's slogan is comprised of prominent words in Vegadelphia's WHERE **GREAT TASTE** IS **PLANT-BASED**® Mark in the same order.

60.     The marketing elements used by the parties share an overwhelming and striking similarity. Dunkin' and Beyond's use of "GREAT TASTE PLANT-BASED" appears visually in a hyphenated, stacked word formation in a font style and green color scheme that is nearly identical to the word orientation, color and font

style used by Vegadelphia in connection with its WHERE GREAT TASTE IS

PLANT-BASED® Mark, even including a sunray background design in promotional

material which is nearly identical to the sunray design used by Vegadelphia:




**PLAINTIFF**                    **DEFENDANTS**




**PLAINTIFF**                    **DEFENDANTS**




**PLAINTIFF**                              **DEFENDANTS**

61.    The parties' goods sold in association with their respective marks are identical. They are both meat substitutes and are products of the kind that the public could certainly attribute to or licensed from a single source.

62.    The parties' channels of trade and customers are identical or highly similar. The parties' end consumer market for meat substitutes includes vegans and vegetarians, a very specific overlapping group of customers, but also more broadly to anyone looking for plant-based food options without sacrificing look or taste. They also overlap in distributing vegan food products for food service providers or retail operators. Vegadelphia sells at wholesale to delis and markets that traditionally compete with Beyond for sales. Vegadelphia sells to Meson Sandwiches (a/k/a El Meson Restaurants), which is a direct competitor of Dunkin' for both breakfast, sandwiches and coffee. El Meson sells vegetarian menu items with Vegadelphia

meat substitutes against which the Dunkin' Beyond Sausage sandwiches directly competed, with El Meson's over three dozen Orlando and Puerto Rico locations competing directly with Dunkin's 50 Orlando locations and 10 locations in Puerto Rico.  In addition, Dunkin' products are also procured and distributed to its retail locations through a supply chain provider, making it further similar to Vegadelphia's distribution.

63.    Dunkin' and Beyond's infringement was also intentional and willful, including because Dunkin' and Beyond intended to derive an undue benefit from their coopting of Vegadelphia's established WHERE GREAT TASTE IS PLANT-BASED® Mark, flooded the market with the infringing campaign in willful and reckless disregard for Vegadelphia's preexisting and established trademark rights, and failed to promptly cease all infringement after notice including, on information and belief, by failing to make any announcement to its 9,000 stores or their staff to cease using and remove signage and apparel featuring the infringing mark.

64.    Further, Vegadelphia's registered WHERE GREAT TASTE IS PLANT-BASED® Mark appeared on the Principal Register at the USPTO and provided at least constructive knowledge of its trademark rights to Dunkin' and Beyond as of 2015, years prior to Dunkin' and Beyond's use of "GREAT TASTE PLANT-BASED."

65.     Dunkin' and Beyond either (i) failed to do a proper trademark clearance search before their use of "GREAT TASTE PLANT-BASED," which any company of their size would understand is a critical diligence step, or (ii) were specifically aware of Vegadelphia's WHERE GREAT TASTE IS PLANT-BASED® Mark which appeared in trademark search results and went ahead with their infringing slogan regardless of Vegadelphia's rights, and on information and belief, Defendants pursued the latter course.

66.     Prior to the nationwide Dunkin' launch of the Beyond Sausage Sandwich, Beyond claims to have used the slogan "PLANT-BASED GREAT TASTE," which has the same components as the nationwide launch slogan "GREAT TASTE PLANT-BASED." Beyond admitted to the USPTO that it used "PLANT-BASED GREAT TASTE" as a mark for the first time in March of 2019. Specifically, Beyond represented to the USPTO in a declaration under penalty of perjury that it "believes that [Beyond] is the owner of the trademark," "the mark is in use in commerce" for meat substitutes, vegan and vegetarian meat products, and plant-based meat substitutes, and that for such goods "the mark was first used by [Beyond or its] related company or licensee or predecessor in interest at least as early as 03/00/2019, and first used in commerce at least as early as 03/00/2019, and is now in use in such commerce." Thus, sometime between March 2019 and November 2019, Beyond and Dunkin' reversed the order of the two-part slogan to the "GREAT

TASTE PLANT-BASED" version that identically mirrored Vegadelphia's WHERE GREAT TASTE IS PLANT-BASED® Mark, and continued at points (for example, Snoop Dogg's verbal use in the noted national commercial) to use the mark in this order. To be clear, the slogan whether or not in flipped order is still an unlawful infringing use as used by Defendants.

67.   The visual similarity of the parties' hyphenated, stacked word formation in a font style and green color scheme that is nearly identical in word orientation, color, font style, and a sunray background design is beyond coincidence and shows copying-in-fact.

68.   Shortly after Beyond filed its own dubious U.S. trademark application for the reversed "PLANT-BASED GREAT TASTE" version of the infringing slogan in March 2020, Vegadelphia sent May 2020 cease and desist letters to Dunkin' and Beyond demanding that they cease and desist all use of the phrase (in forward or reverse order) and that Beyond withdraw its trademark application for "PLANT-BASED GREAT TASTE."

69.   Yet, following receipt of Vegadelphia's cease and desist letters, Dunkin' and Beyond continued to capitalize on the slogan recognition developed in the late 2019 and early 2020 flooding of the marketplace. For example, pictures taken at a drive-thru in late August 2020 showed infringing "GREAT TASTE PLANT-BASED" shirts still being worn by employees, and prominent infringing

"GREAT TASTE PLANT-BASED" signage on the sidewalk in front of a Dunkin' store to attract customers. In-store infringing shirt usage also continued at least into March 2021. Of particular note, given the exponentially increased importance of food delivery services during the COVID-19 pandemic, Doordash and Uber Eats still led off the Dunkin' menu item with the slogan "GREAT TASTE, PLANT-BASED" as late as at least January 2021.



70.    On June 12, 2020, the USPTO itself confirmed the likelihood of confusion between the parties' marks when it rejected Beyond's "PLANT-BASED GREAT TASTE" trademark (the earlier reversed-order version of its slogan) in an Office Action based on a likelihood of confusion with Vegadelphia's WHERE GREAT TASTE IS PLANT BASED® Mark for "meat substitute and poultry substitute." In the Office Action, the USPTO cited as the bases for refusal the facts that the two marks create a confusingly similar commercial impression and the goods include identical as well as closely related products. Beyond then filed an abandonment of the application.

71.    Likewise, Vegadelphia's consumers and its target market familiar with Vegadelphia's WHERE GREAT TASTE IS PLANT-BASED mark are likely to believe that Vegadelphia is the source, sponsor, licensor or affiliate of Dunkin' and Beyond through their use of "GREAT TASTE, PLANT-BASED."

72.    Further, reverse confusion is also likely as a result of Dunkin' and Beyond having overwhelmed the marketplace. Vegadelphia's prospective customers and members of its target market to first encounter Vegadelphia's marketplace use of WHERE GREAT TASTE IS PLANT-BASED *after* encountering the GREAT TASTE PLANT-BASED mark (including its reverse ordering and other variations of the mark, collectively "GREAT TASTE PLANT-BASED Mark")   that Defendants have flooded into the marketplace were and are likely to confuse

Vegadelphia as being associated with Dunkin' and Beyond, with a substantial number of prospective consumers and members of the target market likely to mistakenly conclude that Vegadelphia is either authorized or licensed by these junior users or that Vegadelphia is in fact the junior user and infringing on Dunkin' and Beyond.

73.     Both Vegadelphia and Defendants also both target new consumers to bring into the substitute meat industry with little or no prior familiarity and who are likely to be confused by the parties' respective marks that are nearly identical for identical goods. Dunkin' and Beyond's usage continues to flood the internet and occupy (without limit) two of the top Google search results for WHERE GREAT TASTE IS PLANT-BASED. Even highly-educated consumers are likely to be confused by marks that are nearly identical for identical goods.

74.     By infringing with their unauthorized use, Dunkin' and Beyond have harmed Vegadelphia's valuable goodwill. They have also deprived Vegadelphia of possible licensing revenue and sales opportunities, hindered expansion opportunities, and caused irreparable injury that is difficult to calculate or adequately compensate through monetary damages. Thus, Vegadelphia brings this action for trademark infringement.

## COUNT ONE
### (Federal Trademark Infringement under Section 1114)

75.     Vegadelphia incorporates all allegations contained in this Complaint as

if fully restated herein.

76.    Vegadelphia owns registered trademark rights in the WHERE GREAT TASTE IS PLANT BASED® Mark, a distinctive mark at the time of the infringement.

77.    Vegadelphia is or is likely to be damaged by the Defendants' wrongful and unauthorized use of "GREAT TASTE PLANT-BASED" Mark in commerce and interstate commerce.

78.    Defendants' use of "GREAT TASTE PLANT-BASED" caused and continues to cause a likelihood of confusion, mistake, and deception with Vegadelphia's WHERE GREAT TASTE IS PLANT BASED® Mark and constitutes an infringing use of the WHERE GREAT TASTE IS PLANT BASED® Mark in violation of 15 U.S.C. § 1114.

79.    Defendants have committed the foregoing acts of infringement with knowledge of Vegadelphia's prior rights in the WHERE GREAT TASTE IS PLANT BASED® Mark both intentionally and willfully.

80.    Defendants' conduct is causing immediate and irreparable harm and injury to Vegadelphia, and to its goodwill and reputation, and will continue to both damage Vegadelphia and confuse the public unless enjoined by this court. Vegadelphia has no adequate remedy at law. An award of monetary damages alone cannot fully compensate Vegadelphia for its injuries.

81.     Vegadelphia is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of infringing goods (*see, e.g. W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970)), and the costs of this action. Enhancement for both damages (up to treble) and profits pursuant to Section 1117(a) of the Lanham Act is also warranted.

82.     Furthermore, on information and belief, the actions of Defendants were undertaken willfully, and with the intention of causing confusion, mistake, or deception, and this case qualifies as an exceptional case entitling Vegadelphia to recover enhanced damages and reasonable attorneys' fees, together with prejudgment and post-judgment interest. *See* 15 U.S.C. §§ 1116, 1117.

83.     In addition, Dunkin' and Beyond's GREAT TASTE, PLANT-BASED mark is identical with and substantially indistinguishable from Vegadelphia's WHERE **GREAT TASTE** IS **PLANT-BASED** mark so as to constitute a counterfeit and spurious mark, used willfully and with knowledge of Vegadelphia's senior rights, entitling Vegadelphia to the remedies available against counterfeit marks under Section 1117(b) and (c) of the Lanham Act, including automatic trebling of all profits and damages awarded, automatic award of attorney's fees, prejudgment interest on such amounts (in addition to post-judgment interest), and or statutory damages up to a maximum amount of $2 million per type of good sold,

offered for sale, or distributed.

## COUNT TWO
### (Federal Trademark Infringement Under Section 1125)

84.     Vegadelphia incorporates all allegations contained in this Complaint as if fully restated herein.

85.     Vegadelphia owns common law trademark rights in the WHERE GREAT TASTE IS PLANT BASED Mark.

86.     Defendants' use of "GREAT TASTE PLANT-BASED" Mark violates 15 U.S.C. § 1125(a) because Defendants' use of "GREAT TASTE PLANT-BASED" misrepresents that, and creates a likelihood of confusion as to whether, Vegadelphia is the source, sponsor of, or an affiliate of Defendants' goods.

87.     Vegadelphia as the senior user properly insists that its goodwill and reputation should not be imperiled by the acts of another over which Vegadelphia has no control.

88.     Vegadelphia's goodwill is of substantial value, and Vegadelphia is suffering and will continue to suffer irreparable harm if Defendants' unfair competition as to its use of "GREAT TASTE PLANT-BASED" is allowed to continue.

89.     Defendants' misconduct will continue unless enjoined by this Court. An award of monetary damages alone cannot fully compensate Vegadelphia for its injuries. Vegadelphia lacks an adequate remedy at law.

90.     Vegadelphia is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of infringing goods, and the costs of this action. Enhancement pursuant to Section 1117(a) of the Lanham Act is also warranted for both damages (up to treble) and profits.

91.     Furthermore, on information and belief, the actions of Defendants were undertaken willfully, designed to trade upon the consumer goodwill enjoyed by Vegadelphia, and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Vegadelphia to recover additional enhanced damages and reasonable attorneys' fees, together with prejudgment and post-judgment interest. *See* 15 U.S.C. §§ 1116, 1117.

## COUNT THREE
### (State Statutory Trademark Infringement)

92.     Vegadelphia incorporates all allegations contained in this Complaint as if fully restated herein.

93.     Defendants' actions described above and specifically, without limitation, their use of the GREAT TASTE PLANT-BASED Mark in commerce to advertise, market, and sell meat substitute goods; and Defendants' knowledge of and participation therein, constitute trademark infringement in violation of state law, including the statutory laws of the State of Florida.

94.     By these actions, Defendants have engaged in deceptive trade practices

in violation of state law, including Fla. Stat. § 501.201, *et seq*., and, as a result, Vegadelphia has suffered and will continue to suffer damage to its business, reputation, and goodwill.

95.     As a direct and proximate result of Defendants' willful and intentional actions, Vegadelphia has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Vegadelphia will continue to suffer irreparable damage, entitling Vegadelphia to injunctive relief.

96.     Vegadelphia is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of infringing goods, and the costs of this action.

97.     The actions of Defendants described above were and continue to be willful, wanton and in reckless disregard of the rights of Vegadelphia, and in bad faith. Vegadelphia is entitled to recover the costs of this action and attorneys' fees.

## COUNT FOUR
### (Common Law Trademark Infringement)

98.     Vegadelphia incorporates all allegations contained in this Complaint as if fully restated herein.

99.     Defendants' actions described above and specifically, without limitation, their use of the "GREAT TASTE PLANT-BASED" Mark in commerce to advertise, market, and sell meat substitute goods; and Defendants' knowledge of

and participation therein, constitute common law trademark infringement that is likely to cause or has already caused consumer confusion.

100.  As a result of Defendants' misconduct, Vegadelphia has suffered and will continue to suffer damage to its business, reputation, and goodwill.

101.  As a direct and proximate result of Defendants' willful and intentional actions, Vegadelphia has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Vegadelphia will continue to suffer irreparable damage, thus entitling Vegadelphia to injunctive relief.

102.  Vegadelphia is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of infringing goods, and the costs of this action.

103.  Vegadelphia is entitled to recover the costs of this action and attorneys' fees and is further entitled to recover punitive damages under, *inter alia*, Fla. Stat. § 768.72(2)(a). The actions of Defendants described above were and continue to be willful, wanton and in reckless disregard of the rights of Vegadelphia, and in bad faith. Defendants' infringing conduct alleged herein was taken with actual knowledge of its wrongfulness and the high probability that injury or damage to Vegadelphia would result. The infringing conduct was also gross negligence in that Defendants' conduct was so reckless that it constitutes a conscious disregard or

indifference to the rights of Vegadelphia. The Defendants intentionally individually and collectively pursued that course of conduct, resulting in injury and damage to Vegadelphia. This was a national campaign and company-wide partnership. The Defendant corporations themselves actively and knowingly participated in such conduct and, on information and belief, the infringing GREAT TASTE, PLANT-BASED campaign and partnership between Defendants was condoned, ratified or consented to by the officers, directors, and/or managers of each of the Defendants.

## **COUNT FOUR**
**(Contributory Trademark Infringement)**

104. Vegadelphia incorporates all allegations contained in this Complaint as if fully restated herein.

105. For each federal and state law of infringement, Defendants are also contributorily and indirectly liable for trademark infringement, in addition to their direct liability.

106. This contributory infringement includes, on information and belief, Defendants contributing to infringement by franchisees by:

    a. Dunkin' put together uniform at-store window signage, drive-thru signage, TV materials to display on the TVs behind the sales counter, employee t-shirts, Dunkin' in-store radio curated content, and online training for store and franchise staff, all consistent with Defendants' national advertising campaigns and

each of which promotion-related materials prominently featured the GREAT TASTE PLANT-BASED Mark (as shown in the examples of pictures above), in order to generate the sales of Beyond Sausage sandwiches at franchised locations;

b. Dunkin' directed franchisees to engage in the all-staff training and display the at-store materials they had distributed to each franchisee, over whom Dunkin' had control and the contractual right to terminate franchises for non-compliance with marketing and promotion requirements;

c. Beyond provided creative and direct input into the national campaign, on information and belief initially providing the GREAT TASTE PLANT-BASED Mark to Dunkin' for use in connection with the collaboration in order to make the sandwiches a success at the individual Dunkin' stores, including franchisee locations; Beyond ran promotions on its own social media accounts to drive those Dunkin' sales, and contributed creative input for the specific ads and promotional materials, along with financial assistance for the Dunkin'-wide campaign, promotion and sales of the Beyond Sausage sandwiches under the GREAT TASTE PLANT-BASED Mark.

107.   To the extent any of the actions alleged in this Complaint were carried out by Dunkin' franchisees, or other third parties participating in the "GREAT-TASTE PLANT-BASED" Mark campaign and usage, rather than Defendants directly, Defendants had knowledge of Dunkin' franchisees' actions described above and specifically, without limitation, franchisees' use and the other third-party uses of the "GREAT TASTE PLANT-BASED" Mark in commerce to advertise, market, and sell Beyond Sausage meat substitute goods; and Defendants' knowledge of and participation therein, constitute contributory infringement that is likely to cause or has already caused consumer confusion.

108.   Defendants also intentionally induced these other participants in the infringement, including Dunkin' franchisees, to infringe and use the "GREAT TASTE PLANT-BASED" Mark.

109.   Defendants were at all relevant times able to exercise direct control and practical control over franchisees' actions and third parties that lead to sales of substitute meat products by franchisees, including the franchisees' federal and state law trademark violations alleged above using the "GREAT TASTE PLANT-BASED" Mark.

110.   Defendants did not prevent franchisees' federal and state law trademark violations, but instead encouraged those actions by providing and requiring use of infringing materials bearing the "GREAT TASTE PLANT-BASED" Mark and

refusing to take simple take-down and recall measures to prevent franchisees' federal and state law trademark violations with respect to the "GREAT TASTE PLANT-BASED" Mark.

111.   In addition, while Defendants had the ability and power to take simple measures to prevent franchisees' federal and state law trademark violations alleged above, they chose not to do so. For example, on information and belief, Defendants did not advise anybody at direct-owned or franchised stores to cease use of the GREAT TASTE PLANT-BASED shirts or that there was an ongoing trademark dispute, which were instead permitted for continued use indefinitely as work uniforms, similarly did not advise the delivery apps upon whom they so relied, did not advise regarding at-store signage, did not remove or take steps to remove the social media posts or You Tube videos that continued to drive customer traffic, did not advise others making similar use to remove their online and social media posts, did not take steps to cease search-engine placement based upon the infringing mark usage, all of which not only continued the infringement but had as its natural effect the encouragement and direction of ongoing infringement by third parties directly in connection with sales and interest-generation in Dunkin's Beyond Sausage sandwiches. The natural and known effect of Defendants' failure to so advise or otherwise act to bring to a conclusion the infringement stemming from their mass flooding of the U.S. marketplace with the GREAT TASTE PLANT-BASED

campaign was that the infringement continued in substantial degree long after the height of the full campaign's marketing blitz and continues to this day.

112.   As a result of Defendants' misconduct, Vegadelphia has suffered and will continue to suffer damage to its business, reputation, and goodwill.

113.   As a direct and proximate result of Defendants' willful and intentional actions, Vegadelphia has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Vegadelphia will continue to suffer irreparable damage, thus entitling Vegadelphia to injunctive relief.

114.   Vegadelphia is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of infringing goods, and the costs of this action.

115.   The actions of Defendants described above were and continue to be willful, wanton and in reckless disregard of the rights of Vegadelphia, and in bad faith. Therefore, Vegadelphia is entitled to recover the costs of this action and attorneys' fees and is further entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Vegadelphia respectfully prays for judgment, as follows:

1.   That Vegadelphia be granted preliminary and permanent injunctive relief, including under 15 U.S.C. § 1051 *et seq*. and Fla. Stat. § 501.201, *et seq*.;

specifically, that Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined from:

a.    Using the WHERE GREAT TASTE IS PLANT BASED® Mark, "GREAT TASTE PLANT-BASED" (including in reverse order), or any mark confusingly similar to the WHERE GREAT TASTE IS PLANT BASED® Mark, in connection with the marketing, promotion, advertising, sale, or distribution of any meat substitute product;

b.    Encouraging or assisting others to use the WHERE GREAT TASTE IS PLANT BASED® Mark, "GREAT TASTE PLANT-BASED" (including in reverse order), or any mark confusingly similar to the WHERE GREAT TASTE IS PLANT BASED® Mark, in connection with the marketing, promotion, advertising, sale, or distribution of any meat substitute product;

c.    Making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation or distribution of meat substitute products.

2.    That Defendants file, within ten (10) days from entry of an injunction,

a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

3.    That Defendants be adjudged to have violated 15 U.S.C. § 1114 by infringing Vegadelphia's trademark rights;

4.    That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by infringing Vegadelphia's trademark rights;

5.    That Defendants be adjudged to have unlawfully infringed Vegadelphia's trademark rights under state law, including the laws of the State of Florida, Fla. Stat. § 501.201, *et seq*.;

6.    That Defendants be adjudged to have unlawfully infringed Vegadelphia's common law trademark rights;

7.    That Vegadelphia be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for the damage caused by Defendants' misconduct, including for its willfulness;

8.    That Vegadelphia be awarded statutory damages up to $2 million per counterfeit mark per type of good, or actual damages and a reasonable portion of Defendants' infringing profits to be automatically trebled, pursuant to 15 U.S.C. § 1117(b) and (c);

9.    That Vegadelphia be awarded a reasonable portion of Defendants' profits derived by reason of said acts;

10.    That Vegadelphia be awarded corrective advertising costs in an amount to be proven at trial;

11.    That such damages and profits be enhanced and awarded to Vegadelphia and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act, and also for its infringement by use of a counterfeit mark;

12.    That Vegadelphia be awarded damages in an amount sufficient to compensate it for the damage caused by Defendants' infringement, including under Fla. Stat. § 501.201, *et seq*. and common law;

13.    That Vegadelphia be awarded punitive damages under state law, including *inter alia*, Fla. Stat. § 768.72(2)(a);

14.    That Vegadelphia be granted prejudgment and post-judgment interest under federal and state law;

15.    That Vegadelphia be granted costs associated with the prosecution of this action; and

16.    That Vegadelphia be granted such further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Vegadelphia

respectfully requests a trial by jury of all issues properly triable by jury.


Dated: April 28, 2022

/s/ *James A. Washburn*
James A. Washburn
Florida Bar No. 036609
TROUTMAN SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
404.885.3346
james.washburn@troutman.com

Ben L. Wagner
*Lead Counsel per L.R. 2.02(a)
Cal. Bar No. 243594 (pro hac vice application forthcoming)
TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130
858.509.6010
ben.wagner@troutman.com

Lindsay Mitchell Henner
Georgia Bar No. 276288 (pro hac vice application forthcoming)
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
404.885.3805
lindsay.henner@troutman.com

*Attorneys for Plaintiff Sonate Corporation, d/b/a Vegadelphia Foods*